**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO.

THE NORTH FACE APPAREL CORP.,
TBL LICENSING LLC,
VANS, INC.,
JANSPORT APPAREL CORP.,
ALTRA LLC, and
ICEBREAKER APPAREL, LLC,

       Plaintiffs,

vs.

THENORTHFACEALE.COM aka
NORTHFACEBOUTIQUEPARIS.COM,
NORTHFACECOLOMBIA.ORG, NORTHFACEHRVATSKA.COM,
NORTHFACEITALIAOUTLET.COM, NORTHFACESESPANA-
OUTLET.COM, NORTHFACES-IT.COM,
NORTHFACETAKKLALE.COM,
NORTHFACEXAUSTRALIA.COM,
THENORTHFACEBRASOV.COM, THENORTHFACECL.COM,
THENORTHFACE-COLOMBIA.COM,
THENORTHFACECOSTARICA.COM,
THENORTHFACEDUBAI.COM, THENORTHFACE-GR.COM,
THENORTHFACELISBOA.COM,
THENORTHFACEOUTLETISTANBUL.COM,
THENORTHFACEOUTLETTURKEY.COM, THENORTHFACE-
PERU.COM, THENORTHFACESKLEPWARSZAWA.COM,
THENORTHFACETHAI.COM, and
THENORTHFACEVIETNAMSTORE.COM;
NORTHFACECHILE.NET aka
NORTHFACEFACTORYSTORE.COM,
NORTHFACESINGAPOREOUTLET.COM,
NORTHFACEXSINGAPORE.COM,
THENORTHFACEJACKETSINPAKISTAN.COM,
THENORTHFACENEWYORK.COM,
THENORTHFACENZSALE.COM, THENORTHFACE-
OUTLET.COM, THENORTHFACEPH.COM,
THENORTHFACESVERIGE.COM, and
NORTHFACEINDLASTORE.COM;
NORTHFACEJACKETSINDIAONLINE.COM aka
THENORTHFACE-BRASIL.COM and THENORTHFACEUK.COM;
ADIDASITIMBERLANDDAMA.COM aka
BOTASTIMBERLANDCHILE.COM,
BOTASTIMBERLANDHOMEM.COM,

1

LOJASTIMBERLANDLISBOA.COM,
MAGASINTIMBERLANDSUISSE.COM,
NOITIMBERLANDBAKANCS.COM,
OUTLETTIMBERLANDPORTUGAL.COM,
TIENDATIMBERLANDMADRID.COM,
TIMBERLANDARGENTINATIENDAONLINE.COM,
TIMBERLANDBERNSHOP.COM, TIMBERLANDBOCANCI.COM,
TIMBERLANDBOOTSSCHUH.COM, TIMBERLANDBOTAL.COM
TIMBERLANDBOT-TURKIYE.COM, TIMBERLAND
BRUXELLES.COM, TIMBERLANDCEKET.COM,
TIMBERLANDCIPOK.COM,
TIMBERLANDCLEARANCESALEUK.COM,
TIMBERLANDCOPENHAGEN.COM, TIMBERLANDDAME.COM,
TIMBERLANDDAMENSALE.COM,
TIMBERLANDENCOLOMBIA.COM, TIMBERLANDESPANA-
OUTLET.COM, TIMBERLANDGENEVE.COM, TIMBERLAND-
GIYIM.COM, TIMBERLANDIE.ORG,
TIMBERLANDINARGENTINA.COM,
TIMBERLANDIRELANDOUTLET.COM, TIMBERLAND-
ITALY.COM, TIMBERLAND-KENGAT.COM,
TIMBERLANDMADRIDTIENDAS.COM,
TIMBERLANDMEXICO.COM, TIMBERLAND-MEXICO.COM,
TIMBERLANDNEGOZIROMA.COM,
TIMBERLANDPORTUGALSALDOS.COM,
TIMBERLANDPROMEXICO.COM, TIMBERLAND-
SANDAALIT.COM, TIMBERLANDSCHUHE.COM,
TIMBERLAND-SHOES-JAPAN.COM, TIMBERLAND-SK.COM,
TIMBERLANDSKLEPWARSZAWA.COM,
TIMBERLANDSSE.COM, TIMBERLANDSSTIEFEL.COM,
TIMBERLANDSTOREBERLIN.COM, TIMBERLAND-
TENISICE.COM, TIMBERLANDVYPREDAJ.COM,
TIMBERLANDWARSZAWA.COM, TIMBERLAND-WIEN.COM,
TIMBERLANDXAUSTRALIA.COM, TIMBERLANDXCZ.COM,
TIMBERLANDXFRANCE.COM, TIMBERLANDXGREECE.COM,
TIMBERLANDXHRVATSKA.COM,
TIMBERLANDXIRELANDSALE.COM,
TIMBERLANDXOSTERREICH.COM,
TIMBERLANDXSCHWEIZ.COM, TIMBERLANDXSUOMI.COM,
and TIMBERLANDZURICH.COM;
BOOTTIMBERLANDHRVATSKA.COM aka
OUTLETTIMBERLANDAT.COM,
SCARPETIMBERLANDSCONTATE.COM, TIMBERLAND-
AU.COM, TIMBERLANDBOOTS-SINGAPORE.COM,
TIMBERLANDBOOTSUSASALE.COM,
TIMBERLANDBOTYSLEVA.COM,
TIMBERLANDBRATISLAVA.COM,

TIMBERLANDBUTYPOLSKA.COM,
TIMBERLANDCANADASTORES.COM,
TIMBERLANDFACTORYSTORES.COM,
TIMBERLANDINMALAYSIA.COM, TIMBERLAND-
NORWAY.COM, TIMBERLANDONLINEMALAYSIA.COM,
TIMBERLAND-PHILIPPINES.COM,
TIMBERLANDPHILIPPINESPRICE.COM,
TIMBERLANDPORTUGALOJAS.COM,
TIMBERLANDSALESINGAPORE.COM,
TIMBERLANDSHOEGREECE.COM,
TIMBERLANDSHOESPHILIPPINES.COM, TIMBERLAND-
SYDNEY.COM, TIMBERLAND-TORONTO.COM,
TIMBERLANDXCANADA.COM, and TIMBERLANDZA.COM;
SHOPTIMBERLANDSJP.COM;
TIMBERLANDANTWERPEN.COM;
TIMBERLAND-BE.COM; TIMBERLANDINDIRIM.COM aka
TIMBERLANDOUTLETLONDON.COM,
TIMBERLANDUCUZTR.COM, and TIMBERLANDXBRASIL.COM;
TIMBEROUTLET.CO; OLDSKOOLCLASSICUK.COM; VANSAU-
SALE.COM aka VANSOUTLETJAPAN.COM and VANSSHOP-
HU.COM; VANSENCOLOMBIA.COM;
VANSONLINESTORE.COM; VANSOUTLETURKISH.COM aka
VANSSALEUK.COM, VANSSALEUSA.COM,
VANSSHOESNEWYORK.COM, VANSSHOESSINGAPORE.COM,
and VANSSTOREGREECE.COM; BOUTIQUEEASTPAK.NET aka
SACEASTPAK.COM; ALTRABELGIUM.COM;
ALTRAFACTORYOUTLETS.COM aka
ALTRALONEPEAKSG.COM, ALTRA-MALAYSIA.COM,
ALTRAPHILIPPINES.COM, ALTRARUNNINGMALAYSIA.COM,
ALTRARUNNINGNZSALE.COM, ALTRARUNNINGSG.COM,
ALTRASCHUHE.DE, ALTRASCHUHEZURICH.COM, and
ALTRASHOESCANADAONLINE.COM;
ALTRAFORHANDLERDANMARK.COM aka
ALTRARUNNINGROMANIA.COM and
RUNNINGSHOESSVERIGE.COM;
ALTRARUNNINGSOLDES.COM; ALTRASCHOENEN.COM;
ALTRA-SCHOENEN.COM;
ALTRASCHOENENNEDERLAND.COM; and
NEWICEBREAKER.COM aka STOREICEBREAKER.COM,
Each an Individual, Business Entity, and Unincorporated Association,

      Defendants.

_____/

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiffs, The North Face Apparel Corp., TBL Licensing LLC, Vans, Inc., Jansport Apparel Corp., Altra LLC, and Icebreaker Apparel, LLC (collectively "Plaintiffs"),[1] hereby sue Defendants, the Individuals, Business Entities, and Unincorporated Associations identified in the caption above and set forth on Schedule "A" hereto (collectively "Defendants"). Defendants are promoting, selling, offering for sale and/or distributing goods bearing and/or using counterfeits and confusingly similar imitations of Plaintiffs' respective trademarks within this district through at least the fully interactive commercial Internet websites operating under the domain names identified on Schedule "A" hereto (the "Subject Domain Names"). In support of their claims, Plaintiffs allege as follows:

## JURISDICTION AND VENUE

1.     This is an action for injunctive relief and damages for federal trademark counterfeiting and infringement, false designation of origin, cybersquatting, common law unfair competition, and common law trademark infringement pursuant to 15 U.S.C. §§ 1114, 1116, 1125(a), and 1125(d), The All Writs Act, 28 U.S.C. § 1651(a), and Florida's common law. Accordingly, this Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

2.     Defendants are subject to personal jurisdiction in this district because they operate commercial websites accessible in this district, conduct business by registering and maintaining

---

[1] The Plaintiffs, The North Face Apparel Corp., TBL Licensing LLC, Vans, Inc., Jansport Apparel Corp., Altra LLC, and Icebreaker Apparel, LLC are related ultimate subsidiaries of V.F. Corporation which is a global leader in branded lifestyle apparel, footwear and accessories.

the Subject Domain Names within the United States, and/or direct business activities towards consumers throughout the United States, including within the State of Florida and this district, through at least, the fully-interactive commercial Internet websites accessible and doing business in Florida and operating under the Subject Domain Names. Alternatively, based on their contacts with the United States, Defendants are subject to personal jurisdiction in this district pursuant to Federal Rule of Civil Procedure 4(k)(2) because (i) Defendants are not subject to jurisdiction in any state's court of general jurisdiction; and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 since Defendants are, upon information and belief, non-resident in the United States and engaged in infringing activities and cause harm within this district by advertising, offering to sell, and/or selling infringing products into this district.

## THE PLAINTIFFS

4.      Plaintiff The North Face Apparel Corp. ("The North Face") is a company organized and existing under the laws of the State of Delaware, having its principal place of business at 3411 Silverside Road, Wilmington, DE 19810.

5.      Plaintiff TBL Licensing LLC ("TBL") is a company organized and existing under the laws of the State of Delaware, having its principal place of business at 200 Domain Drive, Stratham, NH 03885.

6.      Plaintiff Vans, Inc. ("Vans") is a company organized and existing under the laws of the State of Delaware, having its principal place of business at 1588 South Coast Dr, Costa Mesa, CA 92626.

7.      Plaintiff Jansport Apparel Corp. ("Jansport") is a company organized and existing under the laws of the State of Delaware, having its principal place of business at 3411 Silverside Road, Wilmington, DE 19810.

8.      Plaintiff Altra LLC ("Altra") is a company organized and existing under the laws of the State of Utah, having its principal place of business at 1551 Wewatta Street, Denver, CO 80202.

9.      Plaintiff Icebreaker Apparel, LLC ("Icebreaker") is a company organized and existing under the laws of the State of Delaware, having its principal place of business at 251 Little Falls Drive, Wilmington, DE 19808.

10.      Goods bearing the Plaintiffs' registered trademarks set forth below are offered for sale and sold by Plaintiffs and/or their licensees which are related operating companies within the V.F. Corporation's family of companies, through various channels of trade within the State of Florida, including this district, and throughout the United States. Defendants, through the sale and offering for sale of counterfeit and infringing versions of goods using counterfeits of Plaintiffs' respective Marks, are directly, and unfairly, competing with Plaintiffs' economic interests in the United States, including the State of Florida and causing Plaintiffs irreparable harm and damage within this jurisdiction.

11.      Like many other famous trademark owners, Plaintiffs suffer ongoing daily and sustained violations of their respective trademark rights at the hands of counterfeiters and infringers, such as Defendants herein, who wrongfully reproduce and counterfeit Plaintiffs' individual trademarks for the twin purposes of (i) duping and confusing the consuming public and (ii) earning substantial profits across their e-commerce websites.

12.     To combat the indivisible harm caused by the concurrent actions of Defendants and others engaging in similar conduct, each year Plaintiffs expend significant monetary resources in connection with trademark enforcement efforts, including legal fees, investigative fees, and support mechanisms for law enforcement, such as field training guides and seminars. The exponential growth of counterfeiting over the Internet, including through online marketplace platforms and social media websites, has created an environment that requires companies such as Plaintiffs to file a large number of lawsuits, often it later turns out, against the same individuals and groups, in order to protect both consumers and themselves from confusion and the erosion of the goodwill associated with Plaintiffs' respective brands.

## THE DEFENDANTS

13.     Defendants operate through domain names registered with registrars in multiple countries, including the United States, and are comprised of individuals, business entities of unknown makeup, and/or unincorporated associations each of whom, upon information and belief, either reside and/or operate in foreign jurisdictions, or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b). Defendants direct their business activities towards consumers throughout the world, including the United States and within this district, through the simultaneous operation of at least the interactive commercial Internet websites existing under the Subject Domain Names.

14.     Defendants use aliases in conjunction with the operation of their businesses, including but not limited to those identified by Defendant Number on Schedule "A" hereto.

15.     Defendants are directly and personally contributing to, inducing, and engaging in the sale of counterfeit branded products as alleged herein, often times as partners, co-conspirators and/or suppliers.

16.     Defendants are part of an ongoing scheme to create and maintain an illegal marketplace enterprise on the World Wide Web, which (i) confuses consumers regarding the source of Defendants' goods for profit, and (ii) expands the marketplace for illegal, counterfeit versions of Plaintiffs' branded goods while shrinking the legitimate marketplace for Plaintiffs' genuine branded goods. The natural and intended byproduct of Defendants' combined actions is the erosion and destruction of the goodwill associated with Plaintiffs' respective famous names and associated trademarks, and the destruction of the legitimate market sector in which Plaintiffs operate.

17.     Defendants are the past and present controlling forces behind the operation of the Internet websites operating under, at least, the Subject Domain Names.

18.     Defendants directly engage in unfair competition with Plaintiffs by (i) advertising, offering for sale and/or selling goods each bearing and/or using counterfeits and infringements of one or more of Plaintiffs' individual trademarks to consumers within the United States and this district through at least the interactive commercial Internet websites operating under the Subject Domain Names and corresponding website Uniform Resource Locator ("URL"), and any additional domains and websites and corresponding website URLs not yet known to Plaintiffs and (ii) creating and maintaining an illegal marketplace enterprise for the purpose of diverting business from Plaintiffs' legitimate marketplace for their genuine goods. Defendants have purposefully directed some portion of their unlawful activities towards consumers in the State of Florida through the advertisement, offer to sell, and/or sale of counterfeit branded goods into the

State, and by operating an illegal marketplace enterprise which impacts and interferes with legitimate commerce throughout the United States, including within the State of Florida.

19.    Defendants have registered, established, or purchased, and maintained their respective Subject Domain Names and the websites operating thereunder. Defendants may have engaged in fraudulent conduct with respect to the registration of the Subject Domain Names by providing false and/or misleading information to their various registrars during the registration or maintenance process. Many Defendants have registered and/or maintained some of their Subject Domain Names to engage in illegal counterfeiting activities.

20.    Defendants will likely continue to register or acquire new domain names, and consequently new URL addresses in connection therewith, for the purpose of selling and/or offering for sale goods bearing and/or using counterfeit and confusingly similar imitations of one or more of Plaintiffs' respective trademarks unless preliminarily and permanently enjoined. Moreover, Defendants will likely continue to maintain and grow their illegal marketplace enterprise at Plaintiffs' expense unless preliminarily and permanently enjoined.

21.    Defendants' Subject Domain Names and corresponding website URLs, and any other alias domain or e-commerce store names and corresponding websites' URLs, and aliases used in connection with the sale of counterfeit and infringing goods bearing and/or using one or more of Plaintiffs' respective trademarks are essential components of Defendants' counterfeiting and infringing activities and are one of the means by which Defendants further their counterfeiting and infringement scheme and cause harm to Plaintiffs. Moreover, Defendants are using Plaintiffs' respective famous names and trademarks to drive Internet consumer traffic to their websites operating under the Subject Domain Names, thereby creating and increasing the

value of the Subject Domain Names and decreasing the size and value of Plaintiffs' legitimate consumer marketplace at Plaintiffs' expense.

## COMMON FACTUAL ALLEGATIONS

### The North Face's Trademark Rights

22.    The North Face is the owner of all rights, title, and interest in the trademarks identified on Schedule "B" hereto (collectively, the "TNF Marks"), which are valid and registered on the Principal Register of the United States Patent and Trademark Office.

23.    The TNF Marks are used in conjunction with the manufacture and distribution of high-quality goods in the categories identified in Schedule "B." True and correct copies of the Certificates of Registration for the TNF Marks are attached hereto as Composite Exhibit "1."

24.    The TNF Marks have been used in interstate commerce to identify and distinguish high-quality goods for an extended period of time and serve as symbols of The North Face's quality, reputation and goodwill.

25.    Further, The North Face and its related companies expend substantial resources developing, advertising and otherwise promoting the TNF Marks. The TNF Marks qualify as famous marks as that term is used in 15 U.S.C. §1125(c)(1).

26.    The North Face and its related companies extensively use, advertise, and promote the TNF Marks in the United States in connection with the sale of high-quality goods. As a result, the TNF Marks are among the most widely recognized trademarks in the United States, and the trademarks have achieved secondary meaning among consumers as identifiers of high-quality goods.

27.    The North Face has carefully monitored and policed the use of the TNF Marks and has never assigned or licensed the TNF Marks to any Defendant in this matter.

28.     Genuine goods bearing and/or using the TNF Marks are widely legitimately advertised and promoted by The North Face, its related companies, authorized distributors, and unrelated third parties via the Internet. Visibility on the Internet, particularly via Internet search engines and social media platforms, is important to The North Face's overall marketing and consumer education efforts. Thus, The North Face, its related companies, and authorized distributors expend significant monetary and other resources on Internet marketing and consumer education regarding its products, including search engine optimization ("SEO"), search engine marketing ("SEM"), and social media strategies. Those strategies allow The North Face, its related companies, and authorized distributors to educate consumers fairly and legitimately about the value associated with the TNF Marks and the goods sold thereunder.

### TBL's Trademark Rights

29.     TBL is the owner of all rights in and to the trademarks identified on Schedule "C" hereto (collectively, the "TBL Marks"), which are valid and registered on the Principal Register of the United States Patent and Trademark Office. The TBL Marks are used in conjunction with the manufacture and distribution of high-quality goods in the categories identified in Schedule "C." True and correct copies of the Certificates of Registration for the TBL Marks are attached hereto as Composite Exhibit "2."

30.     The TBL Marks have been used in interstate commerce to identify and distinguish high-quality goods for an extended period of time and serve as symbols of TBL's quality, reputation and goodwill.

31.     Further, TBL and its related companies expend substantial resources developing, advertising and otherwise promoting the TBL Marks. The TBL Marks qualify as famous marks as that term is used in 15 U.S.C. §1125(c)(1).

32.     TBL and its related companies extensively use, advertise, and promote the TBL Marks in the United States in connection with the sale of high-quality goods. As a result, the TBL Marks are among the most widely recognized trademarks in the United States, and the trademarks have achieved secondary meaning among consumers as identifiers of high-quality goods.

33.     TBL has carefully monitored and policed the use of the TBL Marks and has never assigned or licensed the TBL Marks to any Defendant in this matter.

34.     Genuine goods bearing and/or using the TBL Marks are widely legitimately advertised and promoted by TBL, its related companies, and unrelated third parties via the Internet. Visibility on the Internet, particularly via Internet search engines and social media platforms, is important to TBL's overall marketing and consumer education efforts. Thus, TBL expends significant monetary and other resources on Internet marketing and consumer education regarding its products, including SEO, SEM, and social media strategies. Those strategies allow TBL and its related companies to educate consumers fairly and legitimately about the value associated with the TBL Marks and the goods sold thereunder.

**Vans's Trademark Rights**

35.     Vans is the owner of all rights in and to the trademarks identified on Schedule "D" hereto (collectively, the "VANS Marks"), which are valid and registered on the Principal Register of the United States Patent and Trademark Office. The VANS Marks are used in conjunction with the manufacture and distribution of high-quality goods in the categories identified in Schedule "D." True and correct copies of the Certificates of Registration for the VANS Marks are attached hereto as Composite Exhibit "3."

36.     The VANS Marks have been used in interstate commerce to identify and distinguish high-quality goods for an extended period of time and serve as symbols of Vans's quality, reputation and goodwill.

37.     Further, Vans and its related companies expend substantial resources developing, advertising and otherwise promoting the VANS Marks. The VANS Marks qualify as famous marks as that term is used in 15 U.S.C. §1125(c)(1).

38.     Vans and its related companies extensively use, advertise, and promote the VANS Marks in the United States in connection with the sale of high-quality goods. As a result, the VANS Marks are among the most widely recognized trademarks in the United States, and the trademarks have achieved secondary meaning among consumers as identifiers of high-quality goods.

39.     Vans has carefully monitored and policed the use of the VANS Marks and has never assigned or licensed the VANS Marks to any Defendant in this matter.

40.     Genuine goods bearing and/or using the VANS Marks are widely legitimately advertised and promoted by Vans, its related companies, and authorized distributors via the Internet. Visibility on the Internet, particularly via Internet search engines and social media platforms, is important to Vans's overall marketing and consumer education efforts. Thus, Vans expends significant monetary and other resources on Internet marketing and consumer education regarding its products, including SEO, SEM, and social media strategies. Those strategies allow Vans and its related companies to educate consumers fairly and legitimately about the value associated with the VANS Marks and the goods sold thereunder.

**Jansport's Trademark Rights**

41.     Jansport is the owner of all rights in and to the trademarks identified on Schedule "E" hereto (collectively, the "EASTPAK Marks"), which are valid and registered on the Principal Register of the United States Patent and Trademark Office. The EASTPAK Marks are used in conjunction with the manufacture and distribution of high-quality goods in the categories identified in Schedule "E." True and correct copies of the Certificates of Registration for the EASTPAK Marks are attached hereto as Composite Exhibit "4."

42.     The EASTPAK Marks have been used in interstate commerce to identify and distinguish high-quality goods for an extended period of time and serve as symbols of Jansport's quality, reputation and goodwill.

43.     Further, Jansport and its related companies expend substantial resources developing, advertising and otherwise promoting the EASTPAK Marks. The EASTPAK Marks qualify as famous marks as that term is used in 15 U.S.C. §1125(c)(1).

44.     Jansport and its related companies extensively use, advertise, and promote the EASTPAK Marks in the United States in connection with the sale of high-quality goods. As a result, the EASTPAK Marks are among the most widely recognized trademarks in the United States, and the trademarks have achieved secondary meaning among consumers as identifiers of high-quality goods.

45.     Jansport has carefully monitored and policed the use of the EASTPAK Marks and has never assigned or licensed the EASTPAK Marks to any Defendant in this matter.

46.     Genuine goods bearing and/or using the EASTPAK Marks are widely legitimately advertised and promoted by Jansport, its related companies, and unrelated third parties via the Internet. Visibility on the Internet, particularly via Internet search engines and social media

platforms, is important to Jansport's overall marketing and consumer education efforts. Thus, Jansport expends significant monetary and other resources on Internet marketing and consumer education regarding its products, including SEO, SEM, and social media strategies. Those strategies allow Jansport and its related companies to educate consumers fairly and legitimately about the value associated with the EASTPAK Marks and the goods sold thereunder.

**Altra's Trademark Rights**

47.     Altra is the owner of all rights, title, and interest in and to the trademarks identified on Schedule "F" hereto (collectively, the "ALTRA Marks"), which are valid and registered on the Principal Register of the United States Patent and Trademark Office. The ALTRA Marks are used in conjunction with the manufacture and distribution of high-quality goods in the categories identified in Schedule "F." True and correct copies of the Certificates of Registration for the ALTRA Marks are attached hereto as Composite Exhibit "5."

48.     The ALTRA Marks have been used in interstate commerce to identify and distinguish high-quality goods for an extended period of time and serve as symbols of Altra's quality, reputation and goodwill.

49.     Further, Altra and its related companies expend substantial resources developing, advertising and otherwise promoting the ALTRA Marks. The ALTRA Marks qualify as famous marks as that term is used in 15 U.S.C. §1125(c)(1).

50.     Altra and its related companies extensively use, advertise, and promote the ALTRA Marks in the United States in connection with the sale of high-quality goods. As a result, the ALTRA Marks are among the most widely recognized trademarks in the United States, and the trademarks have achieved secondary meaning among consumers as identifiers of high-quality goods.

51.     Altra has carefully monitored and policed the use of the ALTRA Marks and has never assigned or licensed the ALTRA Marks to any Defendant in this matter.

52.     Genuine goods bearing and/or using the ALTRA Marks are widely legitimately advertised and promoted by Altra, its related companies, and unrelated third parties via the Internet. Visibility on the Internet, particularly via Internet search engines and social media platforms, is important to Altra's overall marketing and consumer education efforts. Thus, Altra expends significant monetary and other resources on Internet marketing and consumer education regarding its products, including SEO, SEM, and social media strategies. Those strategies allow Altra and its related companies to educate consumers fairly and legitimately about the value associated with the ALTRA Marks and the goods sold thereunder.

**Icebreaker's Trademark Rights**

53.     Icebreaker is the owner of all rights in and to the trademarks identified on Schedule "G" hereto (collectively, the "ICEBREAKER Marks"), which are valid and registered on the Principal Register of the United States Patent and Trademark Office. The ICEBREAKER Marks are used in conjunction with the manufacture and distribution of high-quality goods in the categories identified in Schedule "G." True and correct copies of the Certificates of Registration for the ICEBREAKER Marks are attached hereto as Composite Exhibit "6."

54.     The ICEBREAKER Marks have been used in interstate commerce to identify and distinguish high-quality goods for an extended period of time and serve as symbols of Icebreaker's quality, reputation, and goodwill.

55.     Further, Icebreaker and its related companies expend substantial resources developing, advertising and otherwise promoting the ICEBREAKER Marks. The ICEBREAKER Marks qualify as famous marks as that term is used in 15 U.S.C. §1125(c)(1).

56.     Icebreaker and its related companies extensively use, advertise, and promote the ICEBREAKER Marks in the United States in connection with the sale of high-quality goods. As a result, the ICEBREAKER Marks are among the most widely recognized trademarks in the United States, and the trademarks have achieved secondary meaning among consumers as identifiers of high-quality goods.

57.     Icebreaker has carefully monitored and policed the use of the ICEBREAKER Marks and has never assigned or licensed the ICEBREAKER Marks to any Defendant in this matter.

58.     Genuine goods bearing and/or using the ICEBREAKER Marks are widely legitimately advertised and promoted by Icebreaker, its related companies, and unrelated third parties via the Internet. Visibility on the Internet, particularly via Internet search engines and social media platforms, is important to Icebreaker's overall marketing and consumer education efforts. Thus, Icebreaker expends significant monetary and other resources on Internet marketing and consumer education regarding its products, including SEO, SEM, and social media strategies. Those strategies allow Icebreaker and its related companies to educate consumers fairly and legitimately about the value associated with the ICEBREAKER Marks and the goods sold thereunder.

**Defendants' Infringing Activities**

59.     Defendants are each promoting and advertising, distributing, selling, and/or offering for sale goods in interstate commerce bearing and/or using counterfeit and confusingly similar imitations of one or more of the TNF Marks, the TBL Marks, the VANS Marks, the EASTPAK Marks, the ALTRA Marks, and/or the ICEBREAKER Marks (the "Counterfeit Goods") through the interactive commercial Internet websites operating under the Subject

Domain Names, including the corresponding URL addresses. True and correct copies of the web pages reflecting samples of the Internet websites operating under the Subject Domain Names displaying Plaintiffs' branded goods offered for sale are attached hereto as Composite Exhibit "7." Specifically, Defendants are using the TNF Marks, the TBL Marks, the VANS Marks, the EASTPAK Marks, the ALTRA Marks, and/or the ICEBREAKER Marks (collectively, "Plaintiffs' Marks") to initially attract online consumers and drive them to Defendants' e-commerce store websites operating under the Subject Domain Names. Defendants are each using identical copies of one or more of the Plaintiffs' Marks for different quality goods. Plaintiffs have used their respective Marks extensively and continuously before Defendants began offering counterfeit and confusingly similar imitations of Plaintiffs' goods.

60.     Defendants' Counterfeit Goods are of a quality substantially different than that of Plaintiffs' genuine goods. Defendants are actively using, promoting and otherwise advertising, distributing, selling and/or offering for sale substantial quantities of their Counterfeit Goods with the knowledge and intent that such goods will be mistaken for the genuine high-quality goods offered for sale by Plaintiffs despite Defendants' knowledge that they are without authority to use Plaintiffs' Marks. The net effect of Defendants' actions is likely to cause confusion of consumers at the time of initial interest, sale, and in the post-sale setting, who will believe all of Defendants' goods offered for sale in or through Defendants' e-commerce store websites are genuine goods originating from, associated with, and/or approved by Plaintiffs.

61.     Defendants advertise their e-commerce store websites, including their Counterfeit Goods offered for sale, to the consuming public via at least their commercial websites operating under the Subject Domain Names. In so doing, Defendants improperly and unlawfully use one or more of Plaintiffs' Marks without Plaintiffs' permission.

62.     Most Defendants are concurrently employing and benefiting from substantially similar, and often times coordinated, advertising and marketing strategies based, in large measure, upon an unauthorized use of counterfeits and infringements of one or more of Plaintiffs' Marks. Specifically, Defendants are using counterfeits and infringements of Plaintiffs' respective famous names and Plaintiffs' Marks, or variations thereof, to make their websites selling unauthorized goods appear more relevant and attractive to consumers searching for both Plaintiffs and non-Plaintiffs' goods and information online. By their actions, Defendants are contributing to the creation and maintenance of an unlawful marketplace operating in parallel to the legitimate marketplace for Plaintiffs' respective genuine goods. Defendants are causing, individual, concurrent and indivisible harm to Plaintiffs and the consuming public by (i) depriving Plaintiffs of their right to fairly compete for space online and within search engine results and reducing the visibility of Plaintiffs' genuine goods on the World Wide Web, (ii) causing an overall degradation of the value of the goodwill associated with Plaintiffs' Marks, (iii) increasing Plaintiffs' overall cost to market their goods and educate consumers about their brands via the Internet, and (iv) maintaining an illegal marketplace enterprise which perpetuates the ability of Defendants and future entrants to that marketplace to confuse consumers and harm Plaintiffs with impunity.

63.     Defendants are concurrently conducting and targeting their counterfeiting and infringing activities toward consumers and likely causing unified harm, within this district and elsewhere throughout the United States. As a result, Defendants are defrauding Plaintiffs and the consuming public for Defendants' own benefit.

64.     At all times relevant hereto, Defendants in this action had full knowledge of Plaintiffs' respective ownership of Plaintiffs' Marks, including their respective, exclusive rights to use and license such intellectual property and the goodwill associated therewith.

65.     Defendants' use of Plaintiffs' Marks, including the promotion and advertisement, reproduction, distribution, sale, and/or offering for sale of their Counterfeit Goods, is without Plaintiffs' consent or authorization.

66.     Defendants are engaging in the above-described illegal counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Plaintiffs' rights for the purpose of trading on Plaintiffs' goodwill and reputation. If Defendants' intentional counterfeiting and infringing activities are not preliminarily and permanently enjoined by this Court, Plaintiffs and the consuming public will continue to be harmed.

67.     Defendants' above-identified infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers before, during, and after the time of purchase. Moreover, Defendants' wrongful conduct is likely to create a false impression and deceive customers, the public, and the trade into believing there is a connection or association between Plaintiffs' respective genuine goods and Defendants' Counterfeit Goods, which there is not.

68.     Moreover, Defendant Numbers 1-9 and 12-24 have registered at least one of their respective Subject Domain Name(s) using marks that are nearly identical and/or confusingly similar to at least one of Plaintiffs' Marks (collectively the "Cybersquatted Subject Domain Names").

69.     Defendant Numbers 1-9 and 12-24 do not have, nor have they ever had, the right or authority to use Plaintiffs' Marks for any purpose. Further, Plaintiffs' Marks have never been

assigned or licensed to be used on any of the websites operating under the Cybersquatted Subject Domain Names.

70.     Defendant Numbers 1-9 and 12-24 have provided false and/or misleading contact information when applying for the registration of the Cybersquatted Subject Domain Names or have intentionally failed to maintain accurate contact information with respect to the registration of the Cybersquatted Subject Domain Names.

71.     Defendant Numbers 1-9 and 12-24 have never used any of the Cybersquatted Subject Domain Names in connection with a bona fide offering of goods or services.

72.     Defendant Numbers 1-9 and 12-24 have not made any bona fide non-commercial or fair use of Plaintiffs' Marks on a website accessible under any of the Cybersquatted Subject Domain Names.

73.     Defendant Numbers 1-9 and 12-24 have intentionally incorporated at least one of Plaintiffs' respective Marks in their Cybersquatted Subject Domain Names to divert consumers looking for Plaintiffs' genuine websites to their own Internet websites for commercial gain.

74.     Given the visibility of Defendants' various websites and the similarity of their actions, including their SEO and SEM activities, it is clear Defendants are either affiliated, or at a minimum, cannot help but know of each other's existence and the unified harm likely to be caused to Plaintiffs and the overall consumer market in which it operates because of Defendants' concurrent actions.

75.     Although some Defendants may be physically acting independently, they may properly be deemed to be acting in concert because the combined force of their actions serves to multiply the harm caused to Plaintiffs.

76.     Plaintiffs have no adequate remedy at law.

77.     Plaintiffs are suffering irreparable injury and have suffered substantial damages because of Defendants' unauthorized and wrongful use of Plaintiffs' Marks. If Defendants' counterfeiting and infringing, cybersquatting, and unfairly competitive activities, and their illegal marketplace enterprise, are not preliminarily and permanently enjoined by this Court, Plaintiffs and the consuming public will continue to be harmed.

78.     The injury and damages sustained by Plaintiffs have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offers to sell, and sale of their Counterfeit Goods and by the creation, maintenance and very existence of Defendants' illegal marketplace enterprise.

## COUNT I - TRADEMARK COUNTERFEITING AND INFRINGEMENT PURSUANT TO § 32 OF THE LANHAM ACT (15 U.S.C. § 1114)

79.     Plaintiffs hereby adopt and re-allege the allegations set forth in Paragraphs 1 through 78 above.

80.     This is an action for trademark counterfeiting and infringement against Defendants based on their use of counterfeit and confusingly similar imitations of Plaintiffs' Marks in commerce in connection with the promotion, advertisement, distribution, sale and/or offering for sale of the Counterfeit Goods.

81.     Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing products bearing and/or using counterfeits and/or infringements of one or more of Plaintiffs' Marks. Defendants are continuously infringing and inducing others to infringe Plaintiffs' Marks by using one or more of them to advertise, promote, sell and/or offer to sell goods bearing and/or using Plaintiffs' Marks.

82.     Defendants' concurrent counterfeiting and infringing activities are likely to cause and are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods.

83.     Defendants' unlawful actions have caused and are continuing to cause unquantifiable damage and irreparable harm to Plaintiffs and are unjustly enriching Defendants at Plaintiffs' expense.

84.     Defendants' above-described unlawful actions constitute counterfeiting and infringement of Plaintiffs' Marks in violation of Plaintiffs' respective rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

85.     Plaintiffs have each suffered and will continue to suffer irreparable injury due to Defendants' above-described activities if Defendants are not preliminarily and permanently enjoined.

## COUNT II - FALSE DESIGNATION OF ORIGIN
## PURSUANT TO § 43(a) OF THE LANHAM ACT (15 U.S.C. § 1125(a))

86.     Plaintiffs hereby adopt and re-allege the allegations set forth in Paragraphs 1 through 78 above.

87.     Defendants' Counterfeit Goods using, offered for sale, and sold under copies of one or more of Plaintiffs' Marks have been widely advertised and offered for sale throughout the United States via at least the interactive commercial Internet websites operating under the Subject Domain Names.

88.     Defendants' Counterfeit Goods using, offered for sale, and sold under copies of one or more of Plaintiffs' Marks are virtually identical in appearance to Plaintiffs' respective, genuine goods. However, Defendants' Counterfeit Goods are different in quality. Accordingly,

Defendants' activities are likely to cause confusion in the trade and among consumers as to at least the origin or sponsorship of their Counterfeit Goods.

89.    Defendants have used in connection with their advertisement, offers for sale, and sale of their Counterfeit Goods, false designations of origin and false descriptions and representations, including words or other symbols and trade dress, which tend to falsely describe or represent such goods and have caused such goods to enter into commerce in the United States with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Plaintiffs' detriment.

90.    Defendants have each authorized infringing uses of one or more of Plaintiffs' Marks in Defendants' advertisement and promotion of their counterfeit and infringing branded goods. Defendants have misrepresented to members of the consuming public that the Counterfeit Goods being advertised and sold by them are genuine, non-infringing goods.

91.    Additionally, Defendants are simultaneously using counterfeits and infringements of one or more of Plaintiffs' Marks to unfairly compete with Plaintiffs and others for space within organic and paid search engine and social media results. Defendants are thereby jointly (i) depriving Plaintiffs of valuable marketing and educational space online which would otherwise be available to Plaintiffs, and (ii) reducing the visibility of Plaintiffs' genuine goods on the World Wide Web and across social media platforms.

92.    Defendants' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

93.    Plaintiffs have no adequate remedy at law, and have each sustained both individual and indivisible injury and damage caused by Defendants' concurrent conduct. Absent

an entry of an injunction by this Court, Plaintiffs will continue to suffer irreparable injury to their respective goodwill and business reputations, as well as monetary damages.

### COUNT III - CLAIM FOR RELIEF FOR CYBERSQUATTING
### PURSUANT TO §43(d) OF THE LANHAM ACT (15 U.S.C. §1125(d))
(Against Defendant Numbers 1-9 and 12-24 only)

94.     Plaintiffs hereby adopt and re-allege the allegations set forth in Paragraphs 1 through 78 above.

95.     Defendant Numbers 1-9 and 12-24 have acted with the bad faith intent to profit from the TNF Marks, the TBL Marks, the VANS Marks, the EASTPAK Marks, the ALTRA Marks, and the ICEBREAKER Marks and the goodwill associated with the Marks by registering and using the Cybersquatted Subject Domain Names.

96.     The TNF Marks, the TBL Marks, the VANS Marks, the EASTPAK Marks, the ALTRA Marks, and the ICEBREAKER Marks were distinctive and famous at the time Defendant Numbers 1-9 and 12-24 registered the Cybersquatted Subject Domain Names.

97.     Defendant Numbers 1-9 and 12-24 have no intellectual property rights in or to the TNF Marks, the TBL Marks, the VANS Marks, the EASTPAK Marks, the ALTRA Marks, and the ICEBREAKER Marks. The Cybersquatted Subject Domain Names are identical to, confusingly similar to, or dilutive of at least one of the TNF Marks, the TBL Marks, the VANS Marks, the EASTPAK Marks, the ALTRA Marks, and the ICEBREAKER Marks.

98.     Defendant Numbers 1-9 and 12-24's registration and maintenance of the Cybersquatted Subject Domain Names is done with knowledge and constitutes a willful violation of Plaintiffs' rights in their respective Marks. At a minimum, the conduct of these Defendants constitutes reckless disregard for and willful blindness to Plaintiffs' respective rights.

99. Defendant Numbers 1-9 and 12-24's actions constitute cybersquatting in violation of §43(d) of the Lanham Act, 15 U.S.C. §1125(d).

100. Plaintiffs have no adequate remedy at law and have each suffered and will continue to suffer irreparable injury and damage due to the above-described activities of Defendant Numbers 1-9 and 12-24 if these Defendants are not preliminarily and permanently enjoined.

## COUNT IV - COMMON LAW UNFAIR COMPETITION

101. Plaintiffs hereby adopt and re-allege the allegations set forth in Paragraphs 1 through 78 above.

102. This is an action against Defendants based on their (i) promotion, advertisement, distribution, sale, and/or offering for sale of goods bearing and/or using marks which are virtually identical to one or more of Plaintiffs' Marks and (ii) creation and maintenance of an illegal, ongoing marketplace enterprise operating in parallel to the legitimate marketplace in which Plaintiffs sell their genuine goods, in violation of Florida's common law of unfair competition.

103. Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing goods bearing and/or using counterfeits and infringements of one or more of Plaintiffs' Marks. Defendants are also each using counterfeits and infringements of one or more of Plaintiffs' Marks to unfairly compete with Plaintiffs and others for (i) space in search engine and social media results across an array of search terms and/or (ii) visibility on the World Wide Web.

104. Defendants' infringing activities are likely to cause and are causing confusion, mistake, and deception among the consumers as to the origin and quality of Defendants' e-

commerce store websites as a whole and all products sold therein by their use of Plaintiffs' Marks.

105.     Plaintiffs have no adequate remedy at law and are suffering irreparable injury and damages because of Defendants' actions.

### COUNT V - COMMON LAW TRADEMARK INFRINGEMENT

106.     Plaintiffs hereby adopt and re-allege the allegations set forth in Paragraphs 1 through 78 above.

107.     Plaintiffs are the owners of all common law rights in and to Plaintiffs' Marks.

108.     This is an action for common law trademark infringement against Defendants based on their promotion, advertisement, offering for sale, and sale of their Counterfeit Goods bearing and/or using one or more of Plaintiffs' Marks.

109.     Specifically, each Defendant is promoting and otherwise advertising, distributing, offering for sale, and selling goods bearing and/or using infringements of one or more of Plaintiffs' Marks.

110.     Defendants' infringing activities are likely to cause and are causing confusion, mistake, and deception among consumers as to the origin and quality of Defendants' Counterfeit Goods bearing and/or using Plaintiffs' Marks.

111.     Plaintiffs have no adequate remedy at law and are suffering irreparable injury and damages because of Defendants' actions.

### PRAYER FOR RELIEF

112.     WHEREFORE, Plaintiffs demand judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against Defendants as follows:

a.      Entry of temporary, preliminary and permanent injunctions pursuant to 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), The All Writs Act, and Federal Rule of Civil Procedure 65 enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell their Counterfeit Goods; from infringing, counterfeiting, or diluting Plaintiffs' Marks; from using Plaintiffs' Marks, or any mark or trade dress similar thereto, in connection with the sale of any unauthorized goods; from using any logo, trade name, trademark or trade dress that may be calculated to falsely advertise the services or goods of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with Plaintiffs; from falsely representing themselves as being connected with Plaintiffs, through sponsorship or association, or engaging in any act that is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Defendants are in any way endorsed by, approved by, and/or associated with Plaintiffs; from using any reproduction, counterfeit, infringement, copy, or colorable imitation of Plaintiffs' Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants; from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent Defendants' goods as being those of Plaintiffs, or in any way endorsed by Plaintiffs and from offering such goods in commerce; from engaging in search engine optimization strategies using colorable imitations of Plaintiffs' respective name or trademarks; and from otherwise unfairly competing with Plaintiffs.

b.      Entry of a temporary restraining order, as well as preliminary and permanent injunctions pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's

inherent authority, enjoining Defendants and all third parties with actual notice of an injunction issued by the Court from participating in, including providing financial services, technical services or other support to, Defendants in connection with the sale and distribution of non-genuine goods bearing and/or using counterfeits and/or infringements of Plaintiffs' Marks.

c.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that, upon Plaintiffs' request, those acting in concert or participation with Defendants who have notice of the injunction, as service providers cease hosting, facilitating access to, or providing any supporting service to any and all domain names, including but not limited to the Subject Domain Names, and websites through which Defendants engage in the promotion, offering for sale and/or sale of goods bearing and/or using counterfeits and/or infringements of Plaintiffs' Marks.

d.      Entry of an order pursuant to 28 U.S.C §1651(a), The All Writs Act, and the Court's inherent authority, authorizing Plaintiffs to serve the injunction on any e-mail service provider with a request that the service provider permanently suspend the e-mail addresses that are or have been used by Defendants in connection with Defendants' promotion, offering for sale, and/or sale of goods using and/or bearing counterfeits and/or infringements of Plaintiffs' Marks.

e.      Entry of an order pursuant to 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that, upon Plaintiffs' request, Defendants and the top level domain (TLD) Registry for each of the Subject Domain Names, and any other domains used by Defendants, or their administrators, including backend registry operators or administrators, place the Subject Domain Names on Registry Hold status for the remainder of the registration period for any such domain name, thus removing them from the TLD zone files

which link the Subject Domain Names, and any other domain names being used and/or controlled by Defendants to engage in the business of marketing, offering to sell, and/or selling goods bearing and/or using counterfeits and/or infringements of Plaintiffs' Marks, to the IP addresses where the associated websites are hosted.

       f.     Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, canceling for the life of the current registration or, at Plaintiffs' election, transferring the Subject Domain Names and any other domain names used by Defendants to engage in their counterfeiting and/or infringement of Plaintiffs' Marks at issue to Plaintiffs' control so they may no longer be used for unlawful purposes.

       g.     Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, authorizing Plaintiffs to request any Internet search engines which are provided with notice of the injunction, to permanently disable, de-index or delist the specific URLs identified by Plaintiffs, based upon Defendants' unlawful activities being conducted via the Subject Domain Names as a whole and via the URLs identified by Plaintiffs.

       h.     Entry of an order pursuant to 15 U.S.C. § 1116 and the Court's inherent authority, requiring Defendants, their agent(s) or assign(s), to assign all rights, title, and interest, to their Subject Domain Name(s) and any other domain names used by Defendants to Plaintiffs and, if within five (5) days of entry of such order Defendants fail to make such an assignment, the Court order the act to be done by another person appointed by the Court at Defendants' expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

       i.     Entry of an order pursuant to 15 U.S.C. § 1116 and the Court's inherent authority, requiring Defendants, their agent(s) or assign(s), to instruct all search engines to permanently delist or deindex the Subject Domain Name(s) and any other domain names used by

Defendants, and, if within five (5) days of entry of such order Defendants fail to make such a written instruction, the Court order the act to be done by another person appointed by the Court at Defendants' expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

j.      Entry of an order requiring Defendants to account to and pay Plaintiffs for all profits and damages resulting from Defendants' trademark counterfeiting and infringing and unfairly competitive activities and that the award to Plaintiffs be trebled, as provided for under 15 U.S.C. §1117, or that Plaintiffs be awarded statutory damages from each Defendant in the amount of two million dollars ($2,000,000.00) per each counterfeit trademark used and product type offered for sale or sold, as provided by 15 U.S.C. §1117(c)(2) of the Lanham Act.

k.      Entry of an order requiring Defendant Numbers 1-9 and 12-24 to account to and pay Plaintiffs for all profits and damages resulting from those Defendants' cybersquatting activities and that the award to Plaintiffs be trebled, as provided for under 15 U.S.C. §1117, or that Plaintiffs be awarded statutory damages from Defendant Numbers 1-9 and 12-24 in the amount of one hundred thousand dollars ($100,000.00) per cybersquatted domain name used as provided by 15 U.S.C. §1117(d) of the Lanham Act.

l.      Entry of an award pursuant to 15 U.S.C. § 1117 (a) and (b) of Plaintiffs' costs and reasonable attorneys' fees and investigative fees, associated with bringing this action, including the cost of corrective advertising.

m.      Entry of an award of pre-judgment interest on the judgment amount.

n.      Entry of an Order requiring Defendants to pay the cost necessary to correct any erroneous impression the consuming public may have received or derived concerning

the nature, characteristics, or qualities of Defendants' products, including without limitation, the placement of corrective advertising and providing written notice to the public.

        o.      Entry of an order for any further relief as the Court may deem just and proper.

DATED: September 15, 2022.      Respectfully submitted,

STEPHEN M. GAFFIGAN, P.A.

By: **Stephen M. Gaffigan**
Stephen M. Gaffigan (Fla. Bar No. 025844)
Virgilio Gigante (Fla. Bar No. 082635)
T. Raquel Wiborg-Rodriguez (Fla. Bar No. 103372)
401 East Las Olas Blvd., #130-453
Ft. Lauderdale, Florida 33301
Telephone: (954) 767-4819
E-mail: stephen@smgpa.net
E-mail: leo@smgpa.net
E-mail: raquel@smgpa.net

Attorneys for PLAINTIFFS

**SCHEDULE "A"**
<u>**DEFENDANTS BY NUMBER AND SUBJECT DOMAIN NAME**</u>

| Defendant Number | Defendant / Subject Domain Name |
|---|---|
| 1 | thenorthfaceale.com *a/k/a* <br> northfaceboutiqueparis.com <br> northfacecolombia.org <br> northfacehrvatska.com <br> northfaceitaliaoutlet.com <br> northfacesespana-outlet.com <br> northfaces-it.com <br> northfacetakklale.com <br> northfacexaustralia.com <br> thenorthfacebrasov.com <br> thenorthfacecl.com <br> thenorthface-colombia.com <br> thenorthfacecostarica.com <br> thenorthfacedubai.com <br> thenorthface-gr.com <br> thenorthfacelisboa.com <br> thenorthfaceoutletistanbul.com <br> thenorthfaceoutletturkey.com <br> thenorthface-peru.com <br> thenorthfacesklepwarszawa.com <br> thenorthfacethai.com <br> thenorthfacevietnamstore.com |
| 2 | northfacechile.net *a/k/a* <br> northfacefactorystore.com <br> northfacesingaporeoutlet.com <br> northfacexsingapore.com <br> thenorthfacejacketsinpakistan.com <br> thenorthfacenewyork.com <br> thenorthfacenzsale.com <br> thenorthface-outlet.com <br> thenorthfaceph.com <br> thenorthfacesverige.com <br> northfaceindlastore.com |
| 3 | northfacejacketsindiaonline.com *a/k/a* <br> thenorthface-brasil.com <br> thenorthfaceuk.com |
| 4 | adidasitimberlanddama.com *a/k/a* <br> botastimberlandchile.com <br> botastimberlandhomem.com <br> lojastimberlandlisboa.com <br> magasintimberlandsuisse.com |

| | |
|---|---|
| | noitimberlandbakancs.com |
| | outlettimberlandportugal.com |
| | tiendatimberlandmadrid.com |
| | timberlandargentinatiendaonline.com |
| | timberlandbernshop.com |
| | timberlandbocanci.com |
| | timberlandbootsschuh.com |
| | timberlandbotal.com |
| | timberlandbot-turkiye.com |
| | timberland-bruxelles.com |
| | timberlandceket.com |
| | timberlandcipok.com |
| | timberlandclearancesaleuk.com |
| | timberlandcopenhagen.com |
| | timberlanddame.com |
| | timberlanddamensale.com |
| | timberlandencolombia.com |
| | timberlandespana-outlet.com |
| | timberlandgeneve.com |
| | timberland-giyim.com |
| | timberlandie.org |
| | timberlandinargentina.com |
| | timberlandirelandoutlet.com |
| | timberland-italy.com |
| | timberland-kengat.com |
| | timberlandmadridtiendas.com |
| | timberlandmexico.com |
| | timberland-mexico.com |
| | timberlandnegoziroma.com |
| | timberlandportugalsaldos.com |
| | timberlandpromexico.com |
| | timberland-sandaalit.com |
| | timberlandschuhe.com |
| | timberland-shoes-japan.com |
| | timberland-sk.com |
| | timberlandsklepwarszawa.com |
| | timberlandsse.com |
| | timberlandsstiefel.com |
| | timberlandstoreberlin.com |
| | timberland-tenisice.com |
| | timberlandvypredaj.com |
| | timberlandwarszawa.com |
| | timberland-wien.com |
| | timberlandxaustralia.com |
| | timberlandxcz.com |
| | timberlandxfrance.com |

| | |
|---|---|
| | timberlandxgreece.com<br>timberlandxhrvatska.com<br>timberlandxirelandsale.com<br>timberlandxosterreich.com<br>timberlandxschweiz.com<br>timberlandxsuomi.com<br>timberlandzurich.com |
| 5 | boottimberlandhrvatska.com *a/k/a*<br>outlettimberlandat.com<br>scarpetimberlandscontate.com<br>timberland-au.com<br>timberlandboots-singapore.com<br>timberlandbootsusasale.com<br>timberlandbotysleva.com<br>timberlandbratislava.com<br>timberlandbutypolska.com<br>timberlandcanadastores.com<br>timberlandfactorystores.com<br>timberlandinmalaysia.com<br>timberland-norway.com<br>timberlandonlinemalaysia.com<br>timberland-philippines.com<br>timberlandphilippinesprice.com<br>timberlandportugalojas.com<br>timberlandsalesingapore.com<br>timberlandshoegreece.com<br>timberlandshoesphilippines.com<br>timberland-sydney.com<br>timberland-toronto.com<br>timberlandxcanada.com<br>timberlandza.com |
| 6 | shoptimberlandsjp.com |
| 7 | timberlandantwerpen.com |
| 8 | timberland-be.com |
| 9 | timberlandindirim.com *a/k/a*<br>timberlandoutletlondon.com<br>timberlanducuztr.com<br>timberlandxbrasil.com |
| 10 | timberoutlet.co |
| 11 | oldskoolclassicuk.com |
| 12 | vansau-sale.com *a/k/a*<br>vansoutletjapan.com<br>vansshop-hu.com |
| 13 | vansencolombia.com |
| 14 | vansonlinestore.com |

| | |
|---|---|
| 15 | vansoutleturkish.com *a/k/a*<br>vanssaleuk.com<br>vanssaleusa.com<br>vansshoesnewyork.com<br>vansshoessingapore.com<br>vansstoregreece.com |
| 16 | boutiqueeastpak.net *a/k/a*<br>saceastpak.com |
| 17 | altrabelgium.com |
| 18 | altrafactoryoutlets.com *a/k/a*<br>altralonepeaksg.com<br>altra-malaysia.com<br>altraphilippines.com<br>altrarunningmalaysia.com<br>altrarunningnzsale.com<br>altrarunningsg.com<br>altraschuhe.de<br>altraschuhezurich.com<br>altrashoescanadaonline.com |
| 19 | altraforhandlerdanmark.com *a/k/a*<br>altrarunningromania.com<br>runningshoessverige.com |
| 20 | altrarunningsoldes.com |
| 21 | altraschoenen.com |
| 22 | altra-schoenen.com |
| 23 | altraschoenennederland.com |
| 24 | newicebreaker.com *a/k/a*<br>storeicebreaker.com |

### SCHEDULE "B"
### THE NORTH FACE APPAREL CORP.'S
### FEDERALLY REGISTERED TRADEMARKS

| Trademark | Registration Number | Registration Date | Class(es)/Goods |
|---|---|---|---|
| THE NORTH FACE | 0,983,624 | May 14, 1974 | USC 003 - Backpacks<br>USC 022 - Sleeping bags; tents, snowshoes, and skis<br>USC 039 - Camping clothing namely rainwear, parkas, vests, trousers, shoes, gloves and headgear |
|  | 1,030,071 | January 13, 1976 | IC 018 - Backpacks<br>IC 020 - Sleeping bags<br>IC 022 - Tents<br>IC 025 - Camping clothing, namely, rainwear, parkas, vests, trousers, shoes, gloves, headgear and snowshoes |
|  | 2,097,715 | September 16, 1997 | IC 018 – Backpacks<br>IC 020 - Sleeping bags<br>IC 022 - Tents<br>IC 025 - Clothing, namely, parkas, vests, jackets, anoraks, pants, ski bibs, gloves, mittens, underwear, hats, headbands, caps, ski suits, gaiters, shorts, and shirts |
|  | 2,300,758 | December 14, 1999 | IC 025 – Shoes |

| Trademark | Registration Number | Registration Date | Class(es)/Goods |
|---|---|---|---|
|  | 3,538,773 | November 25, 2008 | IC 009 - Computer bags<br>IC 018 - All purpose sporting bags, backpacks, day packs, knapsacks, rucksacks, book bags, tote bags, handbags, duffel bags, knap sacks and duffel sacks, hip and lumbar packs, shoulder bags, book bags, waist packs, fanny packs, day packs, shoulder bags, satchels, mountaineering bags, Boston bags, internal frame packs, backpack bottle pockets, rain covers used to cover the aforesaid; hydration packs, namely, backpack hydration systems consisting of a backpack, a reservoir, and a mouthpiece connected to the reservoir by a tube; parts and fittings for all the aforesaid goods<br>IC 020 - Sleeping bags; covers for sleeping bags; sacks for carrying and storing sleeping bags; non-metal tent poles and tent stakes<br>IC 021 - Hydration packs, namely, hydration system consisting of a reservoir and a mouthpiece connected to the reservoir by a tube<br>IC 022 - Tents; tent accessories, namely, tent storage bags, rain flies, vinyl ground cloths, tent pole storage sacks<br>IC 025 - Clothing, namely, men's, women's, and children's T-shirts, shirts, tops, sweatshirts, sweatpants, pants, side zip pants, shorts, trousers, vests, parkas, anoraks, coats, jackets, wind-resistant jackets, jacket hoods, pullovers, sweaters, underwear, thermal underwear, tights, gloves, mittens; outerwear, namely, |

| Trademark | Registration Number | Registration Date | Class(es)/Goods |
|---|---|---|---|
| | | | shells, one-piece shell suits, ski wear, ski suits, ski vests, ski jackets, ski bibs, bib overalls, bib pants, snowboard wear, snow pants, snow suits, rain wear, rain jackets, rain pants, gaiters, namely, neck gaiters, skirts, skorts, dresses, swim trunks; footwear, namely, athletic shoes, sneakers, trail running shoes, climbing shoes, hiking shoes, slippers, boots, trekking boots, hiking boots, snowshoes, sandals; headgear, namely, caps, hats, headbands, scarves, earbands, balaclavas, visors, beanies<br>IC 035 - On-line retail store services, retail store services, mail order, catalogue and distributorship services, all featuring camping and outdoor gear and equipment, hardware, clothing, sportswear, eyewear, footwear, headgear, sports equipment and related accessories |
|  | 3,630,846 | June 2, 2009 | IC 025 - Footwear; head wear; rainwear; scarves; ski wear |
|  | 3,630,850 | June 2, 2009 | IC 025 - Footwear; gloves; headgear, namely, hats, caps, headbands, visors, hosiery, namely long underwear; jackets; mittens; pants; parkas; shirts; shorts; ski jackets; skirts; tights; vests |

**SCHEDULE "C"**
**TBL LICENSING LLC'S**
**FEDERALLY REGISTERED TRADEMARKS**

| Trademark | Registration Number | Registration Date | Class(es)/Goods |
|---|---|---|---|
|  | 1,075,061 | October 11, 1977 | IC 025 - Footwear, namely boots, work shoes, and hiking shoes |
| TIMBERLAND | 2,932,268 | March 15, 2005 | IC 025 - Footwear; clothing, namely coats, jackets, rainwear, sweaters, shirts, pants, shorts, headwear, gloves, neckwear, belts, sweatshirts, t-shirts, vests, socks |
|  | 2,947,228 | May 10, 2005 | IC 025 - Footwear; clothing, namely coats, jackets, rainwear, sweaters, shirts, pants, shorts, headwear, gloves, neckwear, belts, sweatshirts, t-shirts, vests, socks |

**SCHEDULE "D"**
**VANS, INC.'S**
**FEDERALLY REGISTERED TRADEMARKS**

| Trademark | Registration Number | Registration Date | Class(es)/Goods |
|---|---|---|---|
| **VANS** | 1,267,262 | February 14, 1984 | IC 025 - Shoes |
|  | 1,353,939 | August 13, 1985 | IC 014 - Jewelry<br>IC 018 – Wallets, handbags and all purpose tote bags<br>IC 025 - Wearing apparel, namely, sport shirts, t-shirts, hats, short, jogging suits, socks, swimsuits and shoes |
| **OFF THE WALL** | 1,378,174 | January 14, 1986 | IC 025 - Shoes and wearing apparel namely sport shirts, t-shirts, hats, shorts, jogging suits, socks, swimsuits |
|  | 2,177,772 | August 4, 1998 | IC 025 – Footwear |

**SCHEDULE "E"**
**JANSPORT APPAREL CORP.'S**
**FEDERALLY REGISTERED TRADEMARKS**

| Trademark | Registration Number | Registration Date | Class(es)/Goods |
|---|---|---|---|
| EASTPAK | 1,524,386 | February 14, 1989 | IC 016 - Book bags<br>IC 018 - Brief cases and luggage, back packs, day packs, knapsacks, tote bags, duffle bags |
| EASTPAK | 2,017,368 | November 19, 1996 | IC 018 - All-purpose sporting bags, soft luggage, luggage cases, backpacks, day packs, knapsacks, bookbags, tote bags, duffel bags, garment bags, clothing bags, pullman cases and briefcases |
| EASTPAK U.S.A. | 5,961,970 | January 14, 2020 | IC 016 - Pencil cases<br>IC 018 - Backpacks; Coin purses; Drawstring bags; Duffle bags; Fanny packs; Handbags; Luggage; Messenger bags; Shoulder bags; Tote bags; Wallets; Briefcases and attache cases; Suitcases with wheels; Toiletry cases sold empty; Wheeled duffle bags |

**SCHEDULE "F"**
**ALTRA LLC'S**
**FEDERALLY REGISTERED TRADEMARKS**

| Trademark | Registration Number | Registration Date | Class(es)/Goods |
|---|---|---|---|
|  | 3,999,473 | July 19, 2011 | IC 025 - Athletic shoes; Footwear for track and field athletics; Running shoes; Shoes; Training shoes; Women's shoes |
| ALTRA | 4,134,272 | May 1, 2012 | IC 025 - Shoes; T-shirts |
|  | 5,351,204 | December 5, 2017 | IC 025 - Footwear; Footwear for men; Footwear for women; Gaiters; Hats; Socks; Athletic footwear; Water repelling footwear; Headbands; Pants; Shirts; Shorts; T-shirts; Tights; Clothing, namely, arm |

**SCHEDULE "G"**
**ICEBREAKER APPAREL, LLC'S**
**FEDERALLY REGISTERED TRADEMARKS**

| Trademark | Registration Number | Registration Date | Class(es)/Goods |
|---|---|---|---|
| ICEBREAKER | 4,565,860 | July 15, 2014 | IC 025 - Outerwear, namely, muffs; footwear, namely, insulated over boots |
| ICEBREAKER | 4,893,214 | January 26, 2016 | IC 025 - Clothing, namely, pullovers, scarves, shirts, sweatshirts, singlets, socks, sweaters, tee shirts, underclothes, boxer shorts, jockey shorts, underpants, underwear, thermal underwear, camisoles, shorts, pants, jackets, coats, jerseys, jumpers, vests, leggings, neck warmers, and gloves; headgear, namely, caps, hats, balaclavas |